# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERNARD DAVID NELSON,**<br>1313 Washington Street, Unit 102,<br>Boston, MA 02118<br><br>　　　　**Plaintiff,**<br><br>vs.<br><br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**<br>Office of the Chief Counsel<br>20 Massachusetts Avenue, NW<br>Room 4210<br>Washington, DC 20529,<br><br>and<br><br>**KENNETH T. CUCCINELLI,<br>SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, IN HIS OFFICIAL CAPACITY,**<br>Office of the Chief Counsel<br>20 Massachusetts Avenue, NW<br>Room 4210<br>Washington, DC 20529,<br><br>　　　　**Defendants.** | Civil Action No. 1:20-cv-1934<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND FOR REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

## INTRODUCTION

1. This suit challenges the Defendants' arbitrary and unlawful decision to deny an immigrant visa petition in the employment-based first preference extraordinary ability (EB-1a) category filed by Mr. Bernard David Nelson (Plaintiff), a citizen and national of the United Kingdom.

2.      Plaintiff's petition is based on his sustained national and international acclaim and recognized achievements in the highly specialized and complex field of finance and investment known as style analysis and quantitative risk management that place him among the small percentage of individuals who have risen to the top of the field.

3.      To prove eligibility, the EB-1a classification requires evidence of a qualifying one-time achievement, such as receipt of a major, internationally recognized award, or, in the alternative, evidence that at least three of ten enumerated regulatory criteria are met.

4.      To prove his case, Plaintiff provided evidence in five of the enumerated regulatory criteria.

5.      U.S. Citizenship and Immigration Services (USCIS) found that Plaintiff's evidence met two of the required criteria but dismissed his other evidence and denied the petition.

6.      USCIS's decision disregarded substantial probative evidence detailing how Plaintiff met at least one additional criterion of extraordinary ability and therefore qualified for EB-1a status.

7.      USCIS's decision was arbitrary, capricious, and an abuse of discretion that is contrary to law.

8.      The Court should therefore vacate the denial and direct USCIS to approve Plaintiff's petition and grant him the EB-1a status that he seeks and deserves.

## JURISDICTION

9.      This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq. This Court has

jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and relief under the APA. An actual and justiciable controversy exists between the parties over which Plaintiff seek declaratory relief to protect its legal rights. The United States has waived its sovereign immunity under 5 U.S.C. § 702.

## VENUE

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(e)(1)(A), because this is a civil action in which the Defendants are, respectively, an agency of the United States and an officer of the United States acting in his official capacity, and they reside in this District.

## EXHAUSTION OF REMEDIES

11. Defendants' March 25, 2020 denial of Plaintiff's EB-1a petition constitutes final agency action under the APA. See 5 U.S.C. §§ 551(13); 701(b)(2); 704. Neither the INA nor its implementing regulations at 8 C.F.R. § 103.3(a) require an administrative appeal of the denial. Accordingly, Plaintiff has no administrative remedies to exhaust.

## PARTIES

12. Plaintiff Bernard David Nelson is a citizen and national of the United Kingdom with documented professional accomplishments that define him as a quantitative investment expert with more than twenty years' experience as an investment practitioner whose career is characterized by the formulation and promotion of practical approaches to quantifying and communicating portfolio investment risk and style analysis at the highest international levels.

13. Defendant USCIS is a component of the Department of Homeland Security, 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is

responsible for the adjudication of immigration benefits, including nonimmigrant visa petitions. USCIS denied the EB-1a petition at issue here.

14. Defendant Kenneth T. Cuccinelli is the Senior Official Performing the Duties of the Director of USCIS who oversees the agency's adjudication of immigration benefits and establishes and implements governing policies and who has ultimate responsibility for the adjudication of Plaintiff's EB-1a petition and is sued in his official capacity.

## LEGAL BACKGROUND

15. Immigrant visas are available in the EB-1a classification to foreign nationals who qualify as individuals with extraordinary ability in the sciences, arts, education, business, and athletics.

16. Extraordinary ability is defined as a level of expertise that places an individual in the small percentage who has risen to the top of their field of endeavor.

17. An EB-1a petition must be accompanied by evidence that the foreign national has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise.

18. Required evidence in the EB-1a visa category includes documentation of a qualifying one-time achievement, such as receipt of a major, internationally recognized award, or, in the alternative, evidence that at least three of the ten enumerated regulatory criteria are met.

19. The enumerated alternative criteria are receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor; membership in associations in the field for which classification is sought which require outstanding

4

achievements of their members as judged by recognized national or international experts; published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought; participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought; original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field; authorship of scholarly articles in the field, in professional or major trade publications or other major media; display of work in the field at artistic exhibitions or showcases; performance of a leading or critical role for organizations or establishments that have a distinguished reputation; command of a high salary or other significantly high remuneration for services, in relation to others in the field; or commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

20. If the enumerated criteria do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish eligibility.

21. Since the classification does not require either an offer of employment or a labor certification, foreign nationals may self-petition for EB-1a status.

22. USCIS currently uses a two-part analysis to determine whether the extraordinary ability criteria are met.  First, USCIS determines whether the evidence submitted shows that the foreign national seeking classification as an extraordinary ability immigrant has received a one-time achievement that qualifies him or her for the classification, or, if not, whether the foreign national has alternatively submitted qualifying evidence in at least three of the ten enumerated EB-1a criteria.

23.     If the evidence shows that this threshold is met, USCIS then determines whether the evidence demonstrates the sustained national or international acclaim and whether the claimed achievements have been recognized in the field of expertise such that he or she qualifies as one of that small percentage who has risen to the very top of their field.

24.     If it is shown by a preponderance of the evidence that the EB-1a petition meets the established eligibility requirements for the benefit sought, the petition should be approved. *Matter of Chawathe*, 25 I&N Dec. 369, 375-376 (AAO 2010).

25.     Expert opinion letters provided in support of visa petitions are probative if they are in accord with other information provided in the record and are not questionable in any way. *Matter of Caron International*, 19 I&N Dec. 791 (Comm 1988).

## FACTUAL ALLEGATIONS

### *The I-140 Petition*

26.     Plaintiff filed his EB-1a petition on December 6, 2019 accompanied by evidence of his achievements and sustained acclaim in the highly specialized and complex field of finance and investment known as style analysis and quantitative risk management.

27.     USCIS received Plaintiff's petition under its Case Number SRC2006250348.

28.     Plaintiff's petition included evidence of his original business-related contributions of major significance, including copies of his work product and expert opinion letters; performance of his leading/critical role for organizations of distinguished reputation, namely Style Analytics, Inc. and the Scottish Widows Investment Partnership; his command of a high salary as compared to others in his field that included two professional studies; his memberships in associations that require outstanding achievement as judged by experts, namely the

Transparency Task Force and the CFA Institute/CFA Boston Society; and published material by him and about him that appeared in professional or major trade publications or other major media relating to his work, including *The Financial Times*, *The Globe and Mail*, *U.S. News and World Report*, and several online publications that are leading informational resources for professionals in the financial services industry.

29. With respect to his publications evidence, Plaintiff requested that if USCIS found that the materials did not meet the required standard because it is not published in hard copy format, that it be considered under the comparable evidence standard which has become outdated since, over time, print media has become largely irrelevant, and Internet-based publications are the new standard.

### *USCIS's Request for Additional Evidence*

30. On December 19, 2019 USCIS issued a Request for Additional Evidence (RFE) asserting that none of Plaintiff's evidence met the EB-1a criteria.

31. With respect to Plaintiff's original contributions, USCIS asserted that Plaintiff failed to provide any published materials of his contributions and without such published materials the expert letters he submitted could only be viewed as complimenting his innovations in portfolio analysis rather than corroborating how his contributions revolutionized the industry.

32. With respect to his critical role evidence, USCIS only partially reviewed it, finding that although his role at Style Analytics, Inc. was critical, evidence of the company's distinguished reputation was lacking, but USCIS completely ignored Plaintiff's evidence of a second critical role he had performed at Scottish Widows Investment Partnership where he had been previously employed.

33. With respect to the evidence of his command of a high salary, USCIS again conducted an incomplete review, focusing its analysis on one professional study Plaintiff submitted from the Economic Research Institute which it found to be insufficient to meet the requirement, but completely ignoring a second, more comprehensive study of his compensation history provided by a Yale University professor.

34. With respect to Plaintiff's memberships evidence, USCIS conceded that although the evidence showed that the organizations of which Plaintiff was a member required professional achievements, it did not demonstrate that members must be nominated by other members, and that the associations' bylaws were not submitted to determine if the memberships required outstanding achievements or used recognized national or international experts to determine membership qualifications.

35. With respect to Plaintiff's evidence of published materials by and about him, USCIS asserted that only the materials about him could be considered, and that the evidence provided failed to comport with the plain language of the corresponding criterion which requires that the title, date, and author of the material be provided, that the published material be about the foreign national relating to his or her work in the field, and that the publications in which the material appears qualify as professional or major trade publications or other major media.

### ***Plaintiff's Response to USCIS's Request for Additional Evidence***

36. On March 12, 2020 Plaintiff submitted a comprehensive response to the RFE that analyzed each of its assertions and provided the requested additional evidence where applicable.

37. With respect to his original contributions evidence, Plaintiff took issue with USCIS's assertion that the initial petition failed to include published material documenting his

contributions and directed USCIS's attention to the some ninety pages of representative documentation of his research and work product that were the foundations of several key products sold by Style Analytics, Inc. and used regularly by leading financial services companies in their daily work, as attested to by sworn affidavits from current and former company officials, company contracts, background information on company clients that included, among others, Fidelity, HSBC, Aon, and BNP Paribas Investment Partnership, and further corroborated by attestations from field experts.

38. Plaintiff also provided an additional comprehensive statement from the former Chief Executive Office of Style Analytics Limited, the parent company of Style Analytics Inc., that further analyzed the significance of his original contributions and their impact on the field as a whole.

39. With respect to his evidence of high salary, Plaintiff took issue with the fact that USCIS had completely overlooked the Yale University professor's study included in his initial submission which clearly demonstrated that his total compensation met this criterion of extraordinary ability based on a national survey that used the proper filters for job title, description, and company size, and suggested that USCIS review the record to take this study into account.

40. With respect to Plaintiff's evidence of having performed a critical role at Style Analytics, Inc., Plaintiff provided a new statement from the company's Chief Executive Officer accompanied by documentation of the company's distinguished reputation based on the receipt of industry awards and including the criteria used to determine the winner.

41. With regard to his critical role at the Scottish Widows Investment Partnership, Plaintiff took issue with the fact that this evidence was completely disregarded by USCIS, and took the opportunity to provide additional evidence of his critical role and the company's reputation, consisting of a new letter from the company's former Chief Investment Officer.

42. With respect to his memberships evidence, Plaintiff first addressed his membership in the Transparency Task Force. In his response, Plaintiff provided a statement from the Transparency Task Force's Founder documenting the EB-1a-qualifying selective nature of the membership and explaining that although the Transparency Task Force has no bylaws, it nonetheless publishes an array of official documents that explain how the organization functions, the level of achievement that is required to serve as a Transparency Task Force member of the level that Plaintiff enjoys, and how members are chosen for that level of membership, copies of which were provided with the response, as well as information on other members at Plaintiff's membership level.

43. With respect to his membership in the CFA Institute/CFA Boston Society, Plaintiff provided the requested copy of the association's bylaws which explain in pertinent part that the organization requires that members be nominated by other members.

44. With respect to his published materials evidence, Plaintiff responded that although the evidence did contain some materials that were authored by him and had been included intentionally, many of the articles rejected out of hand by USCIS were indeed authored by others – either field experts or journalists who report on the financial services industry – and that documentation of the qualifying nature of the publications was provided as well, i.e., the publication, circulation, title, date, and author of the material.

45. Plaintiff reiterated his request that his publications evidence be considered under the comparable evidence standard because major media reporting on the specific field in which Plaintiff works is not common and the plain language of the regulation more readily applies to extraordinary ability in other fields, like the arts, where press reports and major media coverage are routine.

### *The USCIS Denial*

46. On March 25, 2020, USCIS denied Plaintiff's petition.

47. USCIS found that that Plaintiff had met two of the EB-1a criteria, namely, that he had performed lead or critical roles at institutions of distinguished reputation and that he had received a high salary or other remuneration in comparison to others similarly employed.

48. With respect to Plaintiff's original contributions evidence, USCIS found that the recommendation letters, contracts, and published internal reports only show an understanding of Plaintiff's work analytic tool products, not that Plaintiff actually contributed to them, even though field experts and company officials had vouched for the fact that the published materials submitted were Plaintiff's work product and that his work product was instrumental to the creation of the corresponding financial analysis tools sold by the company and used by major financial services companies.

49. With respect to Plaintiff's membership in the Transparency Task Force, USCIS rejected the evidence provided by the organization's Founder in both the original submission and RFE response, finding that it did not articulate how a member is selected, even though the Founder had explained in detail, as supported by other documentary evidence, that individuals become members on an invitation-only basis (i.e., nomination) based on their specific

achievements as judged by the Founder who is an expert in the field, and that the selection criteria include review of objective professional achievements in the areas of credibility, respect, industry knowledge and insight, and high regard for clients in the financial services industry.

50. With respect to Plaintiff's membership in the CFA Institute/CFA Boston Society, USCIS asserted that even though Plaintiff had provided a copy of the association's bylaws which stated in pertinent part that the organization requires that members be nominated by other members, since Plaintiff is not at the highest level of membership, the criterion was not satisfied.

51. With respect to Plaintiff's publications evidence, USCIS found that the publications provided were not about him or his career and that the circulation statistics provided were inadequate to establish that the publications qualified as major media, even though the publications included *The Financial Times*, *The Globe and Mail*, *U.S. News and World Report*, and several online publications that are leading informational resources for professionals in the financial services industry and Plaintiff had supplied evidence of their significance.

52. USCIS also rejected any notion that Plaintiff's publications evidence could be considered under the comparable evidence standard, asserting that there was insufficient evidence to establish if the criterion would apply, notwithstanding that Plaintiff supplied the required explanation that this criterion was largely inapplicable because major media reporting is not commonplace the highly specialized and complex field of finance and investment known as style analysis and quantitative risk management, and because the plain language of the regulation is geared toward extraordinary ability in other fields, like the arts, where press reports and major media coverage are routine and expected.

**COUNT ONE**

**Violation of the Administrative Procedure Act 5 U.S.C. § 701, et seq.**

53. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations in paragraphs 1 through 64 above.

54. Plaintiff is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706.

55. A reviewing court shall "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

56. Defendants' actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Defendants failed to properly consider all record evidence; reached factual conclusions unsupported by any evidence in the record; misread relevant authority; misconstrued the governing regulations; and erroneously concluded that Plaintiff failed to meet the requisite number of criteria.

57. Defendants rejection of Plaintiff's evidence of his original contributions to his field is an erroneous abuse of discretion that blatantly ignores evidence in the record because Plaintiff did, in fact, provide objective documentation that fully supported the testimonial letters and their conclusions that his work has been utilized extensively in the field in an impactful way, and that his contributions are original and significant because leading investment managers and asset owners routinely use them in their day to day work.

58. USCIS's assertion that these letters do not establish that Plaintiff's work achievements have made a major significant impact on the field show a disregard for the facts of record because they fail to properly connect the authors themselves to the assertions they make

13

since the individuals who provided these letters are senior investment industry professionals who work at companies that use the tools created by Plaintiff in their daily work.

59. USCIS's conclusion with respect to these letters further runs afoul of *Matter of Caron International*, 19 I&N Dec. 791 (Comm 1988) which dictates that expert opinion letters provided in support of visa petitions are probative if they are, as here, in accord with other information provided in the record and are not questionable. These letters are offered for the truth of the matter assert – namely, that Plaintiff's contributions have revolutionized the style research and quantitative analysis field because he has been responsible for creating financial analysis tools that are used industry wide by investment professionals to better understand their investment portfolios and help clients with investment decision making – and they unquestionably do so.

60. USCIS's rejection of Plaintiff's evidence of the selective nature of his memberships similarly ignores critical evidence and is therefore an abuse of discretion.

61. With respect to the Transparency Task Force, the evidence of the selective nature of this membership is overwhelming, given the organization Founder's statements that are supported by objective evidence and by evidence of the caliber of other individuals who hold the same level of membership as Plaintiff, including, among many others of similar renown, a member of the House of Lords, the upper house of the Parliament of the United Kingdom.

62. With respect to Plaintiff's CFA Institute/CFA Society Boston membership, the bylaws provided in response to the RFE document that regardless of the level of membership, whether it be Regular, Affiliate or Candidate Membership, the individual seeking membership must be sponsored by a member. USCIS's assertion that an EB-1a petitioner is required to

submit evidence documenting that he or she holds the highest level of membership available in a given organization finds no support in the plain language of the regulatory criterion which requires achievement judged by experts, and can only be viewed as an attempt by USCIS to apply an *ultra vires* requirement to this criterion.

63.   USCIS's decision dismissing Plaintiff's publications evidence on the grounds that the articles provided do not qualify because they are not about him and his career shows a similar disregard for the facts.  The articles taken as a whole identify Plaintiff as a key executive in the industry and discuss him and his work.  Some articles include Plaintiff's expert opinion on the analysis of specific funds for the entire financial analysis industry to access.  Other articles discuss the importance of Plaintiff's work and his opinions to the industry as a whole and describe him as an expert in the field.  This evidence falls squarely within the parameters of this criterion of extraordinary ability, and, moreover, are defining elements of the level of expertise that denote extraordinary ability.

64.   USCIS's refusal to alternatively consider this publications evidence under the comparable evidence criterion of extraordinary ability is also erroneous because USCIS has failed to apply this standard properly.  Plaintiff presented his request for consideration under this criterion with a precise explanation of why it does not apply to his field in the same way that it may apply to a field such as the arts, and USCIS should have considered it.

65.   These errors, singly and in combination, were arbitrary, capricious, and an abuse of discretion in violation of the law.

66.   USCIS found that two of the three required criteria of extraordinary were met in this case, and only one additional criterion is needed for approval.

67. Any one of the three additional types of evidence that were dismissed by USCIS qualify for a favorable merits review when the preponderance of the evidence standard is properly applied to the facts of this case, and only one is required.

68. Consequently, Defendants acted arbitrarily, capriciously, and contrary to the law in violation of the APA by denying Plaintiff's petition when it rejected this evidence.

69. As a result of the denial, Plaintiff has been damaged because he will be deprived of the opportunity to continue to pursue his career in the United States as an immigrant, notwithstanding the fact that he meets the EB-1a extraordinary ability criteria both quantitatively and qualitatively.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Declare that Defendants' determination that the evidence submitted by Plaintiff was insufficient to establish that he merits classification as an EB-1a immigrant was arbitrary and capricious, and an abuse of discretion not in accordance with law, in violation of the APA, 5 U.S.C. § 706(2)(A), the INA and the regulations;

2. Vacate the denial of Plaintiff's EB-1a petition and remand this matter to Defendants with instructions that, within ten days of the date of the Court's Order, Plaintiff's EB-1a petition be approved;

3. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

4. Grant such other relief as the Court deems just, equitable and proper.

Dated: July 17, 2020.

Respectfully submitted,

/s/ [Alan Seagrave]

Alan Seagrave (D.C. Bar #989497)
alan@seagravelaw.com
Attorney for Plaintiff
ALAN SEAGRAVE LAW OFFICE
701 Clems Run
Glassboro, NJ 08028
Telephone: (856) 224-8888
Fax: (866) 384-1269